**Robin ALEXANDER, Plaintiff,**

v.

**Mike ESPY, Secretary, United States Department of Agriculture, et al., Defendants.**

**No. CV–N–93–832–DWH.**

United States District Court, D. Nevada.

Feb. 21, 1995.

Raymond Rodriguez, Carson City, NV, Nevada Legal Services, Inc., for plaintiff.

Frank W. Hunger, Washington DC, Kathryn E. Landreth, Las Vegas, NV, Thomas W. Millet, Washington, DC, and Lawrence D. Rosenberg, Washington, DC, for Secretary, U.S. Dept. of Agriculture. Frankie Sue Delpapa and Sheila A. Block, Carson City, NV, for State defendants.

## ORDER

HAGEN, District Judge.

Defendant Mike Espy, in his official capacity as Secretary of the United State Department of Agriculture ("Secretary"), moves to dismiss plaintiff's first, second, third and fourth claims for relief for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6) (# 8). Defendants Scott Craigie, in his official capacity as Director of Nevada State Department of Human Resources, and Myla Florence, in her official capacity as Administrator of the Nevada State Welfare Division ("NSWD"), join in the motion (# 9). Plaintiff has opposed the motion (# 10), and defendants have replied (# 15, # 16).

## Motion to Dismiss Standard

■ A court may grant a motion to dismiss for failure to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986).

■ When considering a motion to dismiss for failure to state a claim, all material allegations in the complaint are accepted as true and are to be construed in the light most favorable to the non-moving party. *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980).

## Background

■ Plaintiff applied for food stamp benefits for herself, her minor children and the father of two of her minor children, Scott Bannister, who was then residing in the household. Scott Bannister owned a 1990 Ford Ranger pick up truck which was subject to a lien in the amount of $8,300.00. The NSWD valued the truck at $6,625.00. Plaintiff was denied food stamp eligibility because the value of the truck exceeded the maximum allowable asset limit for the Food Stamp Program under 7 U.S.C. § 2014(g)(1).

The Food Stamp Act is found at 7 U.S.C. § 2011, *et seq.* Section 2014(b) of the Act commands the Secretary of Agriculture to promulgate national uniform eligibility standards for the Food Stamp Program. The program is administered by state agencies, such as NSWD, which must adhere to the Secretary's uniform standards of eligibility. 7 U.S.C. §§ 2013(c), 2014(b).

Section 2014(g)(1) grants the Secretary authority to define the financial resources which an eligible household may own. Section 2014(g)(1) provides, in relevant part:

The Secretary shall prescribe the types and allowable amounts of financial resources (liquid and nonliquid) assets an eligible household may own, and shall, in so doing, assure that a household otherwise eligible to participate in the food stamp program will not be eligible to participate if its resources exceed $2,000....

Congress began counting a portion of the fair market value of vehicles toward household resources in 1977. Section 2014(g)(2) and USDA regulation 7 C.F.R. § 273.8(h) [1] provide that licensed vehicles whose fair market value is $4,500 or less are excluded from the $2,000 reserve asset limitation. Any value in excess of the $4,500 allowance is counted against the $2,000 reserve.

In 1990, 7 U.S.C. § 2014(g) was amended to add Section 2014(g)(5), which provides:

The Secretary shall promulgate rules by which State agencies shall develop standards for identifying kinds of resources that, as a practical matter, the household is unlikely to be able to sell for any significant return because the household's interest is relatively slight or because the cost of selling the household's interest would be relatively great. Resources so identified shall be excluded as inaccessible resources. A resource shall be so identified if its sale or other disposition is unlikely to produce any significant amount of funds for the sale or other disposition is unlikely to produce any significant amount of funds for the support of the household....

7 U.S.C. § 2014(g)(5), as amended (1991).

In August, 1991, pursuant to the directive set forth in § 2014(g)(5), the Secretary issued proposed regulations, (later withdrawn), to define an inaccessible resource as one "with an expected sale price of $2,000 or less where the cost of selling the resource exceeds 75% of the expected sale price." 56 Fed.Reg. 40,166 (proposed Aug. 13, 1991).

On December 27, 1991, the Deputy Administrator of the Food Stamp Program issued an Administrative Notice, under the authority of the Secretary, to Regional Administrators instructing states to "exercise their best

---

1. 7 C.F.R. 273.8(h)(3) provides, in relevant part: All licensed vehicles not excluded under paragraph (h)(1) of this section shall individually be evaluated for fair market value and that portion of the value which exceeds $4,500 shall be attributed in full toward the household's resource level, regardless of any encumbrances on the vehicles.... 7 C.F.R. 273.8(h)(3).

judgment regarding procedures for applying the inaccessible resource provisions" of § 2014(g)(5). On January 31, 1992, the Deputy issued another notice to its regional offices finding the inaccessible resource provision of § 2014(g)(5) inapplicable to motor vehicles. Neither notice was published in the federal register.

The NSWD followed the Deputy's interpretation, found that § 2014(g)(5) did not apply to the household vehicle, and treated the truck as an available, rather than inaccessible resource, notwithstanding the large lien. The NSWD determined the value of the truck to be $6,625.00, (based on the "blue book" figure) and subtracted $4,500 from the value pursuant to § 2014(g)(2). This left a resource value of $2,225, an amount $225 over the resource limit under § 2014(g)(1).

### Motion to Dismiss

Plaintiff alleges the vehicle should be considered an "inaccessible resource" under 7 U.S.C. § 2014(g)(5) because the lien amount exceeds the vehicle's fair market value, making the sale of the vehicle unlikely to produce any significant amount of funds for the support of the household. Therefore, plaintiff argues, such a vehicle is an inaccessible resource under § 2014(g)(5) and should be excluded when making food stamp eligibility determinations.

Defendants argue plaintiff fails to state a claim because the plain language and legislative history demonstrate that the fair market value analysis of § 2014(g)(2), and not the "inaccessible resource" provision of § 2104(g)(5) applies to household vehicles. In the alternative, defendants argue the Deputy Administrator's interpretation is, at a minimum, a reasonable construction of the Act and as such, is entitled to substantial deference.

The questions before the court are: (1) has Congress directly spoken to the precise question at issue, and, if not, (2) is the agency's interpretation based on a permissible construction of the statute. *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

### 1. Congressional Intent

Defendants argue the legislative history and plain language of the Act mandate that the fair market value analysis of § 2014(g)(2), and not the "inaccessible resource" provision of § 2104(g)(5) apply to household vehicles.

The language is anything but unequivocal. Arguably, the language Congress used supports more than negates plaintiff's position. As noted by the court in *Valenzuela v. Espy*, 860 F.Supp. 1421 (D.Ariz.1993):

> Section 2014(g) identifies its subject matter as the "[a]llowable financial resources which [an] eligible household may own" with financial resources parenthetically defined as liquid and nonliquid. The "liquid and nonliquid" assets creates a category too exclusive to omit motor vehicles which are among the principal assets of many U.S. households. Subsection (g)(2) enumerates kinds of motor vehicles which can be considered a financial "resource". When Congress amended § 2104(g) in 1990 and 1991 to add subsection (g)(5) it continued to use the key word "resources" in providing, that a "resource" shall be excluded as inaccessible if it meets the tests set forth in the 1990 legislation and further spelled out in the 1991 amendment. Because "resources" already denoted certain motor vehicles, as subsection (g)(2) so plainly provides, the same work must be read to include such vehicles in subsection (g)(5).

860 F.Supp. at 1426–1427.

Moreover, the court finds the legislative history of § 2014(g) and its subsections of little assistance in determining the intended interplay between 7 U.S.C. § 2014(g)(2) and 7 U.S.C. § 2014(g)(5). Nor is it clear whether § 2014(g)(5) was intended to modify or nullify 7 C.F.R. 273.8(h)(3) when applied to licensed vehicles with liens that exceed fair market value.

Accordingly, because Congress had not directly addressed this question, defendants' motion to dismiss on these grounds must be denied.

## 2. Deference

Defendants argue the court should give deference to the unpublished notice issued by the Deputy Administrator of the Food Stamp Program on January 31, 1992.

The January 31, 1992 memorandum states:

We have received inquiries asking if the general provisions of section 5(g)(5) of the Act are applicable to vehicles. The answer is no. Section (g)(5) of the Food Stamp Act specifically governs the vehicle exclusion policy. Section 5(g)(2) of the Act provides in part that: "... The Secretary shall, in prescribing inclusions in, and exclusions from, financial resources, follow the regulations in force as of June 1, 1982 ... and shall, in addition, include in financial resources any boats, snowmobiles, and airplanes used for recreational purposes, and vacation homes; and mobile homes used primarily for vacation purposes, and y licensed vehicle ... to the extent that the fair market value of any such vehicle exceeds $4,500 ...".

The Deputy's answer is not entitled to *Chevron* deference. The pronouncement is without considered reason, and does not represent "a reasonable accommodation of conflicting policies." *Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. at 845, 104 S.Ct. at 2783; *Department of Treasury, I.R.S. v. Federal Labor Relations Authority,* 494 U.S. 922, 931–35, 110 S.Ct. 1623, 1629–30, 108 L.Ed.2d 914 (1990) (the agency task is infused with judgment and discretion, requiring the "accommodation of conflicting policies that were committed to the agency's care.").

In *Chevron,* the Supreme Court articulated the type of administrative decision entitled to deference:

In these cases the Administrator's interpretation represents a reasonable accommodation of manifestly competing interests and is entitled to deference: the regulatory scheme is technical and complex, *the agency considered the matter in a detailed and reasoned fashion, and the decision involves reconciling conflicting policies....*

*Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. at 865, 104 S.Ct. at 2792–93 (emphasis added).

While an agency's interpretation must not always be reduced to a specific regulation to be accorded deference, *Federal Deposit Ins. Corp. v. Philadelphia Gear Corp.,* 476 U.S. 426, 439, 106 S.Ct. 1931, 1938–39, 90 L.Ed.2d 428 (1986), the Deputy's answer, issued under the authority of the Secretary, lacks any indicia of deliberate, formal administrative review and shall not be accorded deference to serve as grounds for dismissal of plaintiff's claims. Moreover, spur of the moment directives should not be granted deference when Congress has mandated that policies be set through rulemaking. The Secretary still has not promulgated any regulations to implement the inaccessible resource provisions of § 2014(g)(5) as mandated. *See Valenzuela v. Espy,* 860 F.Supp. at 1424 (where court refused to give deference to said notice because the Secretary has not promulgated any regulations, either in interim or final form, that implement the inaccessible resource provisions of 7 U.S.C. § 2014(g)(5)).

Accordingly, **IT IS HEREBY ORDERED** that defendants motions (# 8, # 9) are **DENIED.**